## Watrous's Estate.

*Divorce—Alimony—Future alimony—Claim against ·decedent's estate for alimony accrued after death.*

1. A wife divorced in another state under a decree allowing her alimony, cannot recover in Pennsylvania alimony which accrues after the death of her divorced husband.

2. A lien cannot be secured upon a divorced husband's estate for future alimony.

3. The Orphans' Court in Pennsylvania will not set aside a fund from the estate of a decedent to secure payment of alimony allowed to his divorced wife by a decree .of a court of another state.

Exceptions to adjudication.   O. C. Phila. Co., April T., 1927, No. 1001.

That part of the adjudication which treats of the subject of the exceptions is as follows:

GEST, J., Auditing Judge.—By his will, dated Feb. 28, 1910, the testator devised his entire estate to his wife, Daisy Hamlin Watrous, who, by writing executed in accordance with the Act of Assembly, on March 15, 1927, elected to take under the will of the testator.

The claim of Annie Isadore Watrous was presented, which arises as follows: Annie Isadore Watrous was the wife of Edwin A. Watrous, the testator, and, from the duly exemplified copy of the record of the District Court of Douglas County, Nebraska, hereto annexed, it appears that the said Annie Isadore Watrous on May 2, 1906, filed her petition in said court, setting forth that she was married to the testator on Jan. 12, 1888; that he, on Dec. 22, 1903, deserted her and had wilfully absented himself from her for two years past, and praying that she might be divorced from him and given the custody of their two children, and that the said defendant be decreed to pay her reasonable alimony and a reasonable amount for the support of said children; and it further appeared that the defendant, by his attorney-at-law, on May 25, 1906, filed an answer to the petition, and afterwards, on May 26, 1906, the court entered a decree finding that the defendant had wilfully deserted his wife, the plaintiff, and that the plaintiff was entitled to a divorce from him; and further decreed that the marriage relations existing between the parties be set aside and wholly and forever annulled, and the parties to the suit were released from all obligations of said marriage relation. It was further ordered that the plaintiff have the care and custody of their two minor children; and it was further ordered and adjudged "that the defendant pay the plaintiff, in lieu of her dower interest and rights in any property he has or may have, the sum of one hundred and ten dollars ($110.00) per month as alimony as long as she lives or until she remarries." It was admitted by the claimant that all the alimony falling due in the lifetime of the testator had been duly paid. She claimed, however, (a) that she should be awarded the alimony which fell due since his death to the date of the audit, and (b) that a fund should be set aside to secure the payment of the alimony to fall due, in instalments, in the future. Counsel for the executrix argued, first, that a Pennsylvania court has no jurisdiction to enforce this decree of the District Court of Douglas County, Nebraska, see Mullinix v. Mullinix, 16 Dist. R. 977; and, second, that the obligation created by the said decree is not a debt due from the decedent which it is the duty of the executrix to pay under section 13 (a) of the Fiduciaries Act. I do not consider constitutional law, as I think the claim should be dismissed on other grounds. I shall assume, for the purposes of this adjudication, that the foregoing decree of the Nebraska court for alimony is a record of a judicial proceeding to which full faith and credit must be given,

under article IV, section 1, of the Constitution of the United States, and I shall assume that the record of this decree, as presented, would entitle the claimant to an award from the estate of this decedent of all the alimony due and unpaid, if any there were, at the time of his decease. I dismiss the claim, however, on the ground that the decedent's liability for alimony ceased upon his death. It is difficult to see any sound basis for holding that the right of a divorced wife for support should be greater than that of a wife who has not been divorced and survives as his legal widow. Alimony is merely a provision of support, just as a wife has a right to be maintained by her husband, but it has never been held that a wife's right to maintenance survived her husband's death.

It may be observed, further, that the decree of the Nebraska court does not even attempt to impose such a continuing obligation upon the defendant in the action, see Lennahan v. O'Keefe, 107 Ill. 620; and even if it had contained such a provision, it would not be binding upon this court, for the rights of parties in the distribution of the estate of a decedent here depend upon our laws.

The enforcement of the theory sought to be maintained would lead to extraordinary consequences. The alimony, at the rate of $110 per month, would be $1320 per annum, and to secure this amount, at 5 per cent. per annum, would require $26,400, while the balance for distribution is $53,952.68, so that half of the estate would have to be reserved. And if the alimony, considered as an annuity, should be protected by a reservation on a 3 per cent. basis, according to the usual practice in this court, the reservation would be proportionately greater, and the legal widow of the testator, whose rights certainly are higher than those of a wife divorced twenty-one years ago, would be reduced to a minimum. And a case may readily be imagined where the entire estate would not suffice and the distribution be postponed until the death of the divorcee, who might, if she were a young woman, live for fifty years. This would be, in my opinion, against the policy of the law.

The weight of authority in other states, as cited by Mr. Adams in his very thorough brief, sustains the position herein taken. Among the decisions are Wilson v. Hinman, 182 N. Y. 408, in which case a mortgage was given to secure alimony, and it was held that the lien terminated upon the husband's death. This decision is fully annotated in 2 L. R. A. (N. S.) 232, and see, also, 18 Am. Law Reps. 1040. Lennahan v. O'Keefe, 107 Ill. 620; Knapp v. Knapp, 134 Mass. 353; Lally v. Lally, 152 Wis. 56, support this view, and although the question appears to be res nova in this State, at least I have been referred to no decision, I do not hesitate to adopt it. The claim of Annie Isadore Watrous is dismissed.

*William E. Caveny*, for exceptions; *John Stokes Adams*, contra.

HENDERSON, J., March 5, 1928.—A careful study of the adjudication and of the briefs of counsel leads us to the conclusion that the Auditing Judge was correct and for the reasons given by him.

In his lifetime this decedent could openly have dissipated his estate, and neither in Nebraska nor elsewhere could this claimant have secured a lien upon his property for future alimony. Strictly speaking, there is no such thing as future alimony, because it is for present support and ceases with the death of the respondent.

It being clear that the relief now sought could not have been obtained in our courts during the lifetime of the decedent, no such relief is available

after his death. It is specifically provided by the Fiduciaries Act (§ 35 b) that actions in which executors and administrators shall be liable to be sued are those "which might have been maintained against such decedent if he had lived."

The exceptions are dismissed and the adjudication is confirmed absolutely.

VAN DUSEN, J., did not sit.

NOTE.—Compare Storey v. Storey, 125 Ill. 608.